IP Investors versus Sedicii Innovations. Case number is 25-2072. I'll note that I'm calling it IP Investors, but in fact, a number of individuals have been substituted for that group in the case in the district court. So, we will begin with Mr. Dustin, who has reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, and good morning, Your Honors. Nicholas Dustin for the appellant plaintiffs. Your Honors, this case involves U.S. citizens, including two New York residents, who were fraudulently induced to invest 610,000 euros in an Irish company called Sedicii, based on the false representation that those shares would be convertible into cryptocurrency tokens from another company called Integra, which later became known as Nillion. The district court dismissed the case on jurisdictional grounds without allowing any jurisdictional discovery, because it credited a self-serving and individualized denial by Defendant Leslie as though, first, it addressed both defendants when it didn't, and second, as though it fully refuted jurisdictional facts pled in the second amended complaint. Okay. Well, district court took the affidavit that there wasn't this show in New York by the individual. You never answered. You are now saying, ah, but it was the company, but that wasn't in your original allegation. So, why should the affidavit have answered that? Why didn't the affidavit answer exactly what you claimed, and you never answered it? And our law is, if that is so, and you don't answer it, you're stuck with the affidavit. And isn't that the end of it? Which is what the district court said. Your Honor, it's a good question, and it's the crux of the case. The one, the second error of the district court was to treat the declaration of Mr. Leslie as though it addressed the entirety of the second examples. Mr. Leslie very carefully denied in-person and over-the-phone conversations from paragraph 69, 68, 69, 119, and 120. Yet, paragraph 73 alleged that he had virtual meetings and written communications where he represented himself as the founder of Nillion, including speeches to the public, which would include New York. Also, the second amended complaint alleged that defendants, plural, both of them, made certain representations in writing, including the term sheet. That's paragraph 76. And the term sheet is in the record. It's irrefutable that it exists, that Cedici itself has a binding contract, the September term sheet, with two New York residents. That was never refuted whatsoever. So, the error, in addition to crediting Mr. Leslie as though he was speaking for both defendants, was the failure to treat these allegations in the second amended complaint as though they were true. Having an agreement with a New York resident triggers personal jurisdiction under which provision? It doesn't say it was executed in New York or was designed to be performed in New York. So, under what provision does paragraph 76, for example, support the exercise of personal jurisdiction? The general doing business in New York and the claims arising from that transaction in New York, Your Honor. So, besides paragraph 76, which paragraphs of the complaint are you asking us to look to, to say that there was personal jurisdiction in New York? So, Your Honor, those that the district court failed to address at all, much less treat as though they were true, include 73, 74, 76, 77, 93, and 104. For example. So, but which ones actually reference? We can decide whether the district court addressed it or not. You point out we have de novo review. From my review of your complaint, it looks like the best that you've been able to do is allege that there was a roadshow that went into New York and that your clients are New York residents, but not that your clients were solicited in New York, which would be a fact that was within your client's knowledge. Its absence seems to be conspicuous. But if I'm missing something, let me know. Yes, Your Honor. Absolutely. I believe the Second Amendment complaint, while this was not necessarily the focus of the briefing below to the district court, absolutely suggests that my clients were solicited while they were in New York. Remember the time frame. Which paragraph? Those that I just read, and I can give you some specific ones. I'm looking at them, and I'm having trouble, like Judge Lyman, seeing how those paragraphs do that. 76, for example. Defendants expressly represented, orally and in writing, that the terms of the master licensing agreement had already been agreed upon and that Cedici was in a position to comply with its obligation to close the deal with Cedici. Those were made to two of my clients who lived in New York at the time. And remember, Your Honors, the time frame here, we're getting a little bit past it, but in 2020 and 2021, for Mr. Leslie to allege I never went to New York, nobody went anywhere in New York. That was the time when we were all home. Hypothetically, in paragraph 76, if you're, and there's no, nothing in the record about this, but if your client, your clients, the two plaintiffs from New York, flew to Ireland and heard those expressed representations orally and read them in writing that are alleged in paragraph 76, would that support jurisdiction in New York? If that's what was pled or what happened, no, but that's not what was pled. But the opposite is not pled, is my point. So we can accept this is true without being able to draw an inference that that occurred in a way that triggers jurisdiction in New York. I think the overall manner in which the complaint was pled was that they were in New York when they heard these things, when they received emails about these things. And my point here is... You keep on saying that, the overall point, but actually you haven't yet pointed us to any language that actually says that. And when a court is reviewing a complaint, the court looks at what somebody's able to allege under Rule 11. So help us. Your Honors, I take your point. The district court dismissed this on the first go-around. I know this is a second amended complaint, but the first two dealt with the organizational standing of the original plaintiff. This was the first time the district court analyzed personal jurisdiction. If there was a defect, such as Your Honor is pointing out, certainly my clients made at least a sufficient start to get jurisdictional discovery and then replead, at which time we could have said, this conversation happened while I was sitting in my living room on July 2nd, 2021, in New York State. Or, Your Honors, as another example, something only within the knowledge of the defendant respondents, they were pled to be desperate to get investments. Respondents act as though they were... These six gentlemen were the only investors that were ever pitched. That's implausible. When somebody's desperate to get investment, they probably go up and down Wall Street and every other street in Manhattan looking at every venture capitalist and every hedge fund for help. Probably is pretty vague. I mean, go on, go on. I don't disagree with Your Honor, but that's the point. The standard is, could we have taken jurisdictional discovery of things that are solely within the knowledge of the respondent? And here, what I just said, probably, possibly, I don't know, specifically because my clients were not given jurisdictional discovery to find out. All right. Let's talk about, for a minute, about forum nonconvenience. Why is... Because jurisdiction, we're de novo, right? Our review. But I think on forum nonconvenience, we are on a more deferential standard of review. So why is it the district court got that wrong, that alternative ruling? The district court failed to analyze most of the factors relevant to forum nonconvenience and instead rested on a demonstrably incorrect decision of fact that the Irish action involved my clients when it didn't. But that's the only piece, right? That the Irish action specifically involved your, some of the plaintiffs here. The other things the district court said about the Irish action were, it's on similar issues, it's already pending. Also incorrect. What? It's also incorrect that it was on similar issues. And the point, Your Honor, I didn't mean to, I'm sorry, interrupt your question, but I see where you're going and I see my time is up. The point is that the court used that incorrect decision about it being a similar case with similar people as a shortcut and then failed to address other factors. And what it existed for was to, quote, reinforce its finding. Right? Isn't that the way the district court ruled on this? But it didn't make findings that are required under forum nonconvenience. What did it miss? For example, it made absolutely no analysis of the adequacy of the Irish forum. I understand, as we all sit here, we assume another common law country is an adequate forum. But that assumption is not the same thing as making the respondents meet their burden of proof on a forum nonconvenience motion, that it is, in fact, an adequate forum. How does the fact that the agreements actually called for, agreed that it would be appropriate to litigate in Ireland, how does that play in? It sounds like both parties agreed it would be an adequate and reasonable forum. The term sheet has no forum record has not been signed by my clients, first of all. So the court over-weighted that by not even having a copy my clients had entered into. But even given that, it's a non-exclusive provision. And there are many factors that must be analyzed for forum nonconvenience, this being only one of them. The court, as another example, failed to take into account the location of witnesses. Mr. Leslie's declaration says, I'm in Ireland and my witnesses are all over Europe. The court failed to take account of that whatsoever. I thought the court found that was unsubstantiated and conclusory. Well, that's Mr. Leslie's declaration that says that. But the court found that, didn't it? I thought the court observed that that had been argued, but said that was unsubstantiated. And continued on to fail to assess where other witnesses were, including we have the declaration of Mr. Patrick Curry that says the founders of Nillian, the very people with whom Siddiqui was supposedly negotiating, were in New York City at the time. Those witnesses are here, just like two of my clients. And the court failed to address that at all in the forum nonconvenience analysis. All right. Thank you, counsel. We'll hear from you again in a few minutes. We'll hear next from Mr. Bowden. Good morning. Thank you, Your Honor. May it please the court. My name is Eric Bowden. I represent defendants Sivici, Innovations Limited, and Robert Leslie. And just to address some comments made by the argument from my friend on the other side, Leslie's declaration, even if alleged statements were alleged to have been made by a video conference or teleconference or by any other means, Leslie's declaration covered it because he categorically claimed that he did not have any meetings or phone calls with investors in New York about raising money for Siddiqui, and that he never made a pitch to any investors in New York to invest in Siddiqui. So hasn't this court held repeatedly that when there is a conflict between the allegations of the complaint and an affidavit, the district court is supposed to have an evidentiary hearing? That's what the court held in Dorchester. That's what the court held in Ball. That's what it's held since then. If there's not an evidentiary hearing, the district court's required to take the well-pled allegations of the complaint as true. Your Honor, that's respectfully incorrect. And in both Dorchester and Marine Midland, when that — when those issues were raised, it didn't involve the situation where you had a defendant with an affidavit faced up against the allegations of the complaint. You had dueling — Isn't that what Judge Newman precisely said in Ball, which Dorchester follows? Judge Newman said in Ball, if there's a well-pled complaint, you take the allegations of the complaint as true. That's true, Your Honor, but then the court, the Second Surgeon and McDermott v. Dieter, confirmed that once you — if you have an affidavit submitted in an opposition or in a motion to dismiss for lack of personal jurisdiction, then if that's uncontroverted, then the allegations in the complaint are not treated as true. That's the question. If there is an affidavit that specifically counters the complaint, is there under our cases a duty on the complaining party to say something to counteract the affidavit, which this person did not? You know, originally the affidavit — the complaint is enough, and then an affidavit, if countered, is not enough to defeat the complaint. But is there a need for the defendant, for a petitioner, complainant, to say something denying the affidavit, which here they did not? And I don't really hear a petitioner say they're saying, actually, the affidavit didn't cover it because of this question of plural is against singular, which frankly doesn't get very far with me. Yes, Your Honor, there is. It was the first time I'm aware of it, and it's in C transport. It was then used again by the court in McDermott v. Dieter, and then the court has routinely applied it in recent cases, including Spetner and Massawi v. Bank of Beirut in the Arab countries. And the decision in C transport, while citing from a Tenth Circuit opinion, it applies this Tenth Circuit opinion and gives a very clear framework. It says the plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient, notwithstanding the contrary presentation by the moving party. So if the plaintiff does not submit an affidavit or evidence of his own, then the affidavit which rebutted the complaint's allegation stands. But if the plaintiff submits an affidavit or other evidence, then the plaintiff wins out on that issue. And like Your Honor, Judge Lemon mentioned earlier that it's conspicuous that the complaint doesn't mention New York, it's highly conspicuous that in light of this standard, the plaintiff did not submit any affidavit or declaration addressing the declaration that Leslie submitted here, because it would have won out, and this jurisdictional issue likely would have been over. Let me ask you a question about the form nonconvenience analysis. I mean, this Court has held, district courts routinely hold that the burden is on the moving party on nonconvenience. And one of the things that the moving party has to do is identify the witnesses who are material and where they're located. And all you put in on that was where Mr. Leslie was located. You had a very general conclusory statement that didn't mention any other witnesses. And on the other side of the ledger, you have two New York residents and the other plaintiffs who are all U.S. residents. So if you take that into account, doesn't the error with respect to who the parties are to the Irish action become terribly material on the form nonconvenience analysis? No, Your Honor. And I'm not aware of any particular requirement for a party asserting form nonconvenience to specifically list out each and every witness. Witnesses are undeniably relevant. There are three main... The circuit held it's an old case, 1978, when a party seeks transfer on account of the convenience of witnesses under 1404A. Now, it's not under form nonconvenience. I recognize that. He must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. That's how courts evaluate whether cases should be transferred or dismissed. That's their FNC. Your Honor, we didn't move under that provision. We moved under common law form nonconvenience. And the location of witnesses is a relevant factor, but it's not the only public and private factor. But generally speaking, if we get to form nonconvenience, given that the district court didn't really focus on that, isn't it wiser to send it back and say the district court should do a form nonconvenience analysis? Just as a matter of proper procedure, the district court clearly decided no jurisdiction. If it was right, that's that. If it wasn't, then shouldn't we ask it to think about form nonconvenience rather than try to decide it ourselves? Your Honor, the Court did think about form nonconvenience, and the analysis was not cursory. I'm finding the exact amount of pages that the analysis covered, but it covered each of the form nonconvenience factors. Biobaseri primarily only challenges the adequacy of the forum, which is one of the factors which the Court considered, and it gave three points supporting the adequacy of the Irish forum, namely the fact that both parties, including the appellants, expressly agreed that the courts of Ireland would be an adequate forum. That should end the inquiry there. Moving on to the next point, this matter is governed by Irish law. An Irish court is an adequate forum to decide Irish law. And the third point, which we do concede there is harmless error in the opinion, this complaint, the Second Amended Complaint, alleges one single conversation, one alleged conversation, and it involved one plaintiff who filed this lawsuit and Christopher Masanto who filed the Irish lawsuit. It alleges negligent misrepresentation, damages for violation of law, about the exact same agreement that's the subject of this lawsuit. So if, I mean, we usually honor a plaintiff's choice of forum, and if, assume hypothetically that the plaintiff here was solicited by fraudulent representations while the plaintiff was in New York, the defendants injected themselves into New York to solicit a fraudulent investment from the plaintiff, does the fact that there's the defendants also soliciting people outside of New York divest the plaintiff of his choice of forum? That would be quite a dramatic conclusion. Your Honor, that's not what is alleged in this complaint. That one conversation that involved both the plaintiff and the British individual was not alleged to have occurred in New York. So if I recognize that, I'm asking you to assume hypothetically. I raised the point with the plaintiff that there's a conspicuous gap in the complaint, but you're arguing because there is a solicitation of an investor outside of New York that this plaintiff, by virtue of that fact alone, should be sent to Ireland. In a hypothetical world, not applying to the Second Amended Complaint, if there were adequate facts pleaded sufficient to satisfy 9b, which there aren't here, that there was a fraudulent misrepresentation, there are facts supporting that that occurred in New York, perhaps that would defeat a form nonconvenience argument. That's not what we have here. We don't have any of the facts pleaded needed to satisfy 9b. We don't even have allegations that any specific events actually occurred in New York. And to the extent that someone might infer it, those are all rebutted by Leslie's declaration. Like Your Honors pointed out earlier, the complaint does not allege that Cedici or some unnamed Cedici agent did anything. All actions are attributed to Leslie. Had they pleaded it, we would have addressed it. But they did not plead that in the complaint. We cannot and we're not required to speculate about what unpleaded allegations must be addressed on a personal jurisdiction issue. The fact that the plaintiff did not come back with a declaration or any kind of evidence of their own, it tells the whole story. And to your point, Judge Lyman, earlier, the cases where a hearing was required, both sides presented something on the motion to dismiss. Dorchester, the defendant filed a motion to dismiss, the plaintiff submitted a letter saying we agree to jurisdiction, and then the other side provided an affidavit. We had two pieces of evidence, and the Second Circuit held that an evidentiary hearing was required to weigh these two pieces of evidence. What hearing do we have here when it's entirely one-sided? That's not what the Court requires. The decision, the standard that I expressed before from C-Transport that's been applied again in McDermid, that's been applied again in Spettner, that's been applied again in Masalli up through 2024, these cases are after Dorchester, well after Ball. They're separate standards. It's two separate issues, and the courts respectively affirm. Thank you, counsel. Thank you. We'll hear again from Mr. Dustin. Thank you, Your Honors. The reference to Dorchester is interesting and actually is why this case needs to be reversed. In Dorchester, as my colleague just said, in opposition to the motion to dismiss, the party attached an agreement to its motion papers. It did not submit an affidavit. From an evidentiary perspective, that is no different than what my clients did here when they attached a contract to their pleading ahead of time. Yes, they didn't provide an affidavit. Neither did the plaintiff in Dorchester. And the court said that court erred by crediting the affidavits of the defendants in deciding that that contract was fraudulent. The contract that you submitted did not controvert the assertions in the affidavit that there was no solicitation in New York itself. But the pleadings do, Your Honor. And to answer your questions to me earlier... Well, but the pleadings were countered by the affidavit. And it's at that point under our faith that it is up to you to show why the affidavit is wrong. Otherwise, the plaintiff, the pleadings would govern regardless of an affidavit. Well, Your Honor, actually, that's exactly what the case law says, is that unrebutted provisions of the pleadings need to be read and assumed to be true unless there's an evidentiary hearing to resolve fact disputes. And here, to my earlier point, as Your Honor's pointed out, the provisions I quoted talk about general dealings. The defendants entered into a contract with the plaintiffs. Are they in New York or not? Yes, in fact, the pleading says that in paragraphs 50, 51, and 52. Until now, you haven't made this argument. You argued that the affidavit did not counter the complaint because of the existence of company, the existence of plural. Now you're making a different argument. But your basic argument until now was, yes, the affidavit could counter the complaint, but didn't do it properly or fully because of this matter of company and plural. Now, are you shifting your argument? No, Your Honors, I'm making both, and I'm choosing to highlight the second over the first because I think our papers cover the plural versus singular fairly well, exactly as you said. But you never made the argument in your brief, the other argument in your brief, did you? We did. I couldn't tell you the page number off the top of my head, but we've argued. No, you couldn't. Okay. In any case, I can point to that now that Your Honors are asking me, and I'm pointing out that one, for example, paragraph 50 says defendants engaged in substantial business here, including soliciting the investment at issue in New York. Many of the key acts took place in New York. That's 51. Defendants fraudulently solicited the investments in New York. That's paragraph 52. Then you go to the ones I find. All part of your original complaint, yes. Yes, and those were unrebutted provisions in the original complaint, and that's why the district court erred in failing to credit those statements. But they were rebuttments, though. Okay. They were some. In fact, and the last point I'll make, unless Your Honors have more questions, the Leslie Declaration begs more questions than it answers. It's very, very careful to deny in-person and over-the-phone conversations in four specific paragraphs, but then never addresses the allegation, for example, in 73, that he had virtual meetings and written communications. It's too careful to be credited in the way the district court credited it. It very, very specifically dances around the important facts, like who entered into a contract with my clients? Somebody did. They didn't just send money as a gift to Ireland. It just may be that the solicitation took place when your clients were not in New York. The paragraphs that you pointed to are the sort of boilerplate type of allegations that usually are not credited by courts, correct? I think 50 to 52 do look general on their own, but then when you read the other paragraphs I was speaking about earlier, like in the 73, 76, the ones I cited earlier, when you put those together, those are not conclusory. It is that the defendant solicited my clients, and then if you go back to 50, 51, 52, that happened while my clients were in New York. Is it articulated in the best possible manner? No, Your Honor. But at the pleading stage, the court has to assume those provisions which were not rebutted by the Leslie Declaration were true, and at the very least, Your Honors, even if this didn't make out a prima facie case for jurisdiction, entry into a contract with New Yorkers meets the low bar of a sufficient start to get jurisdictional discovery, at which point the court then could have assessed the full set of facts. Perhaps the outcome would be the same, perhaps not, but my clients weren't given that opportunity. All right. Thank you, counsel. Thank you both. The matter will be taken under advisement.